## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 25 2019, 9:52 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Megan Shipley
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Katherine A. Cornelius
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In re the Termination of the Parent-Child Relationship of K.H., Ne.W., and Ny.W. (Minor Children) and S.W. (Mother)

S.W. (Mother),

*Appellant-Respondent,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner*

and

Child Advocates, Inc.,

June 25, 2019

Court of Appeals Case No. 19A-JT-45

Appeal from the
Marion Superior Court, Juvenile Division

The Honorable
Marilyn Moores, Judge

The Honorable
Larry Bradley, Magistrate

Trial Court Cause Nos.
49D09-1807-JT-827
49D09-1807-JT-830
49D09-1807-JT-831

**Vaidik, Chief Judge.**

# Case Summary

[1]     S.W. ("Mother") appeals the termination of her parental rights to three of her children.  We affirm.

# Facts and Procedural History

[2]     The undisputed facts are set forth in the trial court's order.[1]  Mother and R.B. are the biological parents of Ny.W., born in 2014, and Ne.W., born in 2015.[2] Mother has another child—K.H., born in 2011—from a previous relationship with A.H., who died in 2017.[3]

---

[1] Mother asserts that the trial court's findings that Mother "has not been able to maintain employment" and that she "was receiving unemployment at the time of trial" are "either unsupported or misleading." Appellant's Br. p. 21.  That is not so.  Mother, herself, testified that at the time of trial she had quit her job, was receiving unemployment, and was "still looking for employment."  Tr. p. 35.  As such, we conclude that the trial court's findings regarding Mother's employment are supported by evidence and not misleading. Because Mother does not otherwise challenge the findings, we accept them as true.  *See Maldem v. Arko*, 592 N.E.2d 686, 687 (Ind 1992).

[2] R.B.'s parental rights were also terminated; however, he does not participate in this appeal and we therefore limit our narrative to the facts relevant to Mother.

[3] Mother also has two teenaged children: A.W., born in 2002, and X.I., born in 2003, who are not the subject of this appeal.  A.W. is in Aunt Tw.'s care under a guardianship, and X.I. is in Aunt Tr.'s care under a guardianship.

[3]     In May 2014, Ohio's Children Services Board filed a complaint alleging that K.H. and Ny.W. were dependent and abused children due to a domestic-violence incident between Mother and A.H. in which Mother suffered significant injuries. The Ohio complaint also alleged that Ny.W. was born exposed to marijuana and that Mother tested positive for marijuana and cocaine at Ny.W.'s birth. Mother admitted using cocaine and marijuana during her pregnancy with Ny.W. K.H. and Ny.W. were removed from Mother's care and placed in foster care because Mother had no housing and was unwilling to go to a domestic-violence shelter. The Ohio case resulted in reunification, and K.H. and Ny.W. were returned to Mother. Thereafter, Mother moved to Indiana with K.H. and Ny.W., and thereafter, Ne.W. was born.

[4]     In August 2016, Mother was arrested for Level 5 felony attempted trafficking with an inmate, Level 6 felony possession of a legend drug, and Class B misdemeanor possession of marijuana. The Department of Child Services (DCS) conducted an assessment regarding allegations of abuse and neglect due to Mother's arrest, drug use, and failure to enroll her school-aged children in school. Family Case Manager (FCM) Kristina Clanin met with Mother at the Delaware County Jail. Mother said that she and K.H., Ny.W., and Ne.W. (collectively, "Children") had been evicted from their apartment on July 30 and that K.H. was staying with her sister, Aunt Tr., and Ny.W. and Ne.W. were staying with her other sister, Aunt Tw. A few days later, Mother posted bail, was released from jail, and moved to South Bend to live with an ex-boyfriend.

On August 15, DCS filed a petition alleging that Children were in Need of Services (CHINS). DCS also requested that K.H. remain placed with Aunt Tr. and that Ny.W. and Ne.W. remain placed with Aunt Tw. In September, the trial court adjudicated Children CHINS after Mother admitted the allegations in DCS's petition. Thereafter, the trial court issued a dispositional order requiring Mother to participate in reunification services, including: home-based case management, a substance-abuse assessment, random drug screens, and visitation with Children. K.H. remained placed with Aunt Tr., and Ny.W. and Ne.W. remained placed with Aunt Tw. At some point, Mother moved to Indianapolis. Then, in August 2017, DCS requested that the CHINS case be transferred to Marion County because Children's respective placements and Mother lived in Marion County. The trial court granted DCS's request, and the CHINS case was transferred to Marion Superior Court Juvenile Division.

After Mother moved to Indianapolis, she never obtained adequate housing for herself or Children. Mother stayed in different hotels for about a month at a time, she lived in a friend's apartment for two months, and for about six months she lived at an address on Udell Street. During this time, Mother sporadically participated in home-based case management but was inconsistent and did not progress in obtaining stable housing or managing her budget. Throughout the CHINS case, Mother repeatedly tested positive for marijuana, cocaine, and alcohol and sometimes refused to submit to drug screens. In March 2018, Mother agreed to plead guilty to all three charges in the 2016 criminal case and was sentenced to thirty months with fifteen months executed through home

detention and fifteen months suspended to probation. She was also ordered to complete a substance-abuse assessment within thirty days.

[7] On July 5, DCS filed petitions to terminate Mother's parental rights to Children, and the trial court set a fact-finding hearing for December 2018. Before the termination hearing, Mother finally completed a substance-abuse assessment in October. The substance-abuse assessment recommended twelve weeks of outpatient treatment. Mother was scheduled to begin outpatient treatment on October 30, but she did not show up.

[8] On December 3, the trial court held the fact-finding hearing on the termination petitions. At the time, Mother was on probation for the 2016 criminal case and awaiting a hearing on probation violations for failing to appear for drug screens, attend probation appointments, attend outpatient treatment, and verify employment. *See* Ex. 81. During the hearing, Mother's Delaware County FCM, Mischa Davis, testified that from September 2016 through December 2016, all of Mother's drug screens, except for one, were positive. *See* Tr. p. 17. FCM Davis also said that during the time she worked with Mother, "[Mother] did a lot of deflecting and blaming placement at times for reasons why things were not progressing." *Id.* at 19. Mother's home-based caseworker, Dellonda Richardson, testified that Mother would sometimes miss visits with Children and gave excuses that "she had to work," "she was not feeling well," "she had some illnesses," or that "she didn't have transportation." *Id.* at 42. Children's Guardian ad Litem, Greg Cannon, testified that "[Mother] doesn't have stable housing, employment, continues to either not screen or provide positive drug

screens." *Id.* at 47. GAL Cannon said, "We are essentially at the same place two years since the case opened . . . there has been no progress. . . . There continue[s] to be issues with positive screens or lack of screening. There continue[s] to be issues with lack of stable housing, lack of employment, the inability or unwillingness to meet [Children's needs]." *Id.* at 51. GAL Cannon recommended termination of Mother's parental rights and that Children be adopted. *See id.* at 47.

[9] Mother's Marion County FCM, Zachary Inman, testified that Mother had not been compliant with home-based case management or random drug screens since the case was transferred to Marion County in 2017. FCM Inman also testified that Mother did not complete a substance-abuse assessment until October 2018. FCM Inman recommended termination of Mother's parental rights and adoption by Children's current placements. *See id.* at 59. Mother testified and said that she was staying at a hotel but had found a house that she hoped to move into by the end of the week. Mother also said that although she was currently unemployed, she was going to interview for a job at a gas station. Finally, Mother said that she was willing to complete the twelve weeks of outpatient treatment recommended by the substance-abuse assessment. On December 11, the trial court issued an order terminating Mother's parental rights.

[10] Mother now appeals.

# Discussion and Decision

[11] When reviewing the termination of parental rights, we do not reweigh the evidence or judge witness credibility. *In re K.T.K.*, 989 N.E.2d 1225, 1229 (Ind. 2013). Rather, we consider only the evidence and reasonable inferences that are most favorable to the judgment of the trial court. *Id.* When a trial court has entered findings of fact and conclusions, we will not set aside the trial court's findings or judgment unless clearly erroneous. *Id.* To determine whether a judgment terminating parental rights is clearly erroneous, we review whether the evidence supports the trial court's findings and whether the findings support the judgment. *In re V.A.*, 51 N.E.3d 1140, 1143 (Ind. 2016).

[12] A petition to terminate parental rights must allege, among other things:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>>
>> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and

> (D) that there is a satisfactory plan for the care and treatment of
> the child.

Ind. Code § 31-35-2-4(b)(2). DCS must prove the alleged circumstances by clear and convincing evidence. *In re K.T.K.*, 989 N.E.2d at 1231. If the court finds that the allegations in a petition are true, the court shall terminate the parent-child relationship. Ind. Code § 31-35-2-8(a).

[13] First, Mother contends that there is insufficient evidence to support the trial court's conclusion that there is a reasonable probability the conditions resulting in Children's removal will not be remedied. In determining whether the conditions that resulted in a child's removal will not be remedied, the trial court engages in a two-step analysis. First, the trial court must ascertain what conditions led to the child's placement and retention in foster care. *In re K.T.K.*, 989 N.E.2d at 1231. Second, the trial court determines whether there is a reasonable probability that those conditions will not be remedied. *Id.* "The trial court must consider a parent's habitual pattern of conduct to determine whether there is a substantial probability of future neglect or deprivation." *Id.*

[14] Here, Mother failed to demonstrate that she was any closer to providing Children a safe, stable home than she was at the beginning of the CHINS case. The evidence shows that Mother was incarcerated when Children were placed with Aunt Tr. and Aunt Tw., she did not comply with home-based case management, she did not comply with random drug screens, and in December 2018 she was alleged to have violated probation by failing to appear for drug screens, failing to attend probation appointments, failing to attend outpatient

treatment, and failing to verify employment. The trial court's unchallenged findings on this issue support its conclusion that there is a reasonable probability the conditions resulting in Children's removal will not be remedied. *See, e.g., In re E.M.*, 4 N.E.3d 636, 644 (Ind. 2014) (findings regarding father's continued non-compliance with services support trial court's conclusion that conditions resulting in children's removal from father's care would not be remedied). To the extent that Mother argues that she recently attempted to engage in services by completing a substance-abuse assessment in October 2018, we commend her for taking the first step to free herself from addiction. However, the trial court was well within its discretion to disregard the efforts Mother made only shortly before termination and to weigh more heavily her history of conduct. *See In re K.T.K.*, 989 N.E.2d at 1234. Accordingly, the trial court did not err when it concluded that there is a reasonable probability that the conditions resulting in removal will not be remedied.[4]

[15] Next, Mother argues that the trial court erred in concluding that termination is in Children's best interests. To determine what is in a child's best interests, the trial court is required to look to the totality of the evidence. *In re A.D.S.*, 987 N.E.2d 1150, 1158 (Ind. Ct. App. 2013), *trans. denied*. In doing so, the trial

---

[4] Because we affirm the trial court's conclusion that there is a reasonable probability the conditions resulting in Children's removal will not be remedied, we do not address its alternate conclusion that there is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of Children. *See In re A.G.*, 45 N.E.3d 471, 478 (Ind. Ct. App. 2015) (Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive and requires the trial court to find only one of the two requirements of subsection (B) has been established by clear and convincing evidence), *trans. denied*.

court must subordinate the interest of the parent to those of the child. *Id.* The trial court need not wait until a child is irreversibly harmed before terminating the parent-child relationship. *Id.* We have previously held that recommendations by both the DCS case manager and GAL to terminate parental rights, in addition to evidence that the conditions resulting in removal will not be remedied, is sufficient to show by clear and convincing evidence that termination is in the child's best interests. *Id.* at 1158-59.

[16] Here, in addition to Mother's substance-abuse and housing issues that necessitated DCS involvement and her complete lack of progress since then, both GAL Cannon and FCM Inman testified that terminating Mother's parental rights would serve the best interests of Children. *See* Tr. pp. 47, 59. Furthermore, the trial court found that Mother "appears to lay blame on others, and makes excuses, for her poor choices." Appellant's App. Vol. II p. 93 (Finding 26); *see also In re A.P.*, 981 N.E.2d 75, 82-83 (Ind. Ct. App. 2012). Meanwhile, the trial court found that Children were happy in their pre-adoptive placements and "clearly bonded with their caregivers." Appellant's App. Vol. II p. 93 (Finding 34); *see also In re K.T.K.*, 989 N.E.2d at 1230 (finding that "children have an interest in terminating parental rights that prevent adoption and inhibit establishing secure, stable, long-term, continuous relationships."). Accordingly, the trial court did not err when it concluded that termination is in Children's best interests.

[17] Finally, Mother challenges the trial court's conclusion that there is a satisfactory plan for Children's care and treatment. DCS's plan need not be

detailed, so long as it offers a general sense of the direction the child will go after the parent-child relationship is terminated. *Lang v. Starke Cty. Office of Family & Children*, 861 N.E.2d 366, 374 (Ind. Ct. App. 2007), *trans. denied*. Adoption is generally a satisfactory plan, even when a potential adoptive family has not been identified. *Id.* at 375. Part of the reason for this is that it is within the authority of the adoption court, not the termination court, to decide whether an adoptive placement is appropriate. *In re A.S.*, 17 N.E.3d 994, 1007 (Ind. Ct. App. 2014), *trans. denied*.

[18] Here, DCS's plan is adoption. FCM Inman and GAL Cannon agreed with this plan, and Aunt Tr. was willing to adopt K.H. and Aunt Tw. was willing to adopt Ne.W. and Ny.W. Mother contends that adoption of Ne.W. and Ny.W. by Aunt Tw. is not a satisfactory plan because she alleges that Aunt Tw. is married to a woman whose parental rights to her own children have been terminated. Regardless of whether those allegations are true or false, it is the adoption court, not the termination court, who will decide who adopts Ne.W. and Ny.W. Therefore, the trial court did not err in concluding that adoption is a satisfactory plan for Children.

[19] Affirmed.

Kirsch, J., and Altice, J., concur.